IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. 09-00163-01-CR-W-HFS |
| ) | |
| TERRY INGERSON ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND PHYSICAL
EVIDENCE, SUGGESTIONS IN SUPPORT THEREOF AND
REQUEST FOR EVIDENTIARY HEARING**

COMES NOW Defendant, Terry Ingerson, by and through his undersigned counsel, Matthew J. O'Connor, and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, hereby moves this court for its Order suppressing all statements made by Defendant to federal agents pursuant to a custodial interrogation on March 20, 2009. Defendant requests an evidentiary hearing on this motion. Further, Defendant hereby requests the Court to suppress all tangible evidence and statements obtained by the government as a result of the custodial interrogation of Defendant on March 20, 2009 including but not limited to: a Nikon Coolpix 2000 camera, a Nikon Coolpix starter memory card, an Oregon Scientific digital video camera, a Nikon Coolpix 5600 camera, a Kodak Easy Share CX7330 Camera, a Nikon Coolpix 7600 camera, a Polaroid PDC 640 camera, and any other information seized pursuant to a search warrant issued by United States Magistrate Judge Larsen on March 25, 2009. The alleged statements of Defendant, procured by the government during the execution of the search warrant on March 25, 2009 are fruits of the poisonous tree and are subject to suppression.

1

## I.  Factual Background

On March 20, 2009 at or about 9:00 AM, Immigration and Customs Enforcement ("ICE")  agents from the ASAC/Kansas City office executed a search warrant at the Ingerson residence at 401 Frances Street, Polo, Missouri pursuant to a child pornography investigation. At approximately 9:50 AM, the Defendant returned home from work to 401 Frances Street, Polo, Missouri. Immediately upon his arrival, Defendant was approached at the entrance of the residence by Senior Special Agent James D. Kanatzar, who informed Defendant that the federal agents were searching the residence pursuant to a warrant for evidence of child pornography.

Agent Kanatzar and Senior Special Agent Jesse Stoker began questioning Defendant on the front steps to his residence while the remainder of the agents continued searching inside the residence. After a period of interrogation outside the Ingerson residence, the agents escorted Defendant inside the residence to a bedroom and continued questioning Defendant. At no time did any agent inform Defendant of his *Miranda* warnings. During the interrogation, Defendant made incriminating statements. Defendant also revealed his sleep pattern to the agents, and stated that as a result of his night shift job, he typically sleeps from 1:00 PM to 9:00 PM every day.

Agents used the statements elicited from Defendant during the execution of the March 20, 2009 search warrant to procure a second search warrant for the residence. Fully aware of Defendant's sleep habits, ASAC/Kansas City agents executed the second search warrant on March 25, 2009 at 2:20 PM. Defendant was sleeping at the time the agents arrived, and he had consumed a sleeping pill prior to their arrival. Prior to interrogating Defendant on March 25, 2009, and as other agents were searching the residence pursuant to the warrant, SSA Stoker read Defendant his *Miranda* warnings

2

which Defendant stated he understood. SSA Kanatzar and SSA Stoker proceeded to interrogate Defendant in Defendant's stepdaughter's bedroom.

## II. Law and Argument

### A. Statements Made By Defendant on March 20, 2009 Should Be Suppressed Because Defendant Was Not Adequately Apprised of His Rights Under *Miranda*.

In the case of police questioning, the police must warn the suspect of certain Constitutional rights when the suspect is interrogated in custody. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). The warnings must advise the suspect of his right to refuse to answer questions and his right to have his attorney present during the interrogation. *See United States v. Ollie*, 442 F.3d 1135, 1137 (8th Cir. 2006) (citing *Miranda*, 384 U.S. at 444). The bright-line *Miranda* guidelines "establish[] that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with certain warnings." *Dickerson v. United States*, 530 U.S. 428, 434 (2000).

"*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). A custodial interrogation "occurs when an officer's interaction with the suspect is 'likely to illicit an incriminating response.'" *United States v. Torres-Lona*, 491 F.3d 750, 757 (8th Cir. 2007). Formal arrest is the most straightforward example of when a suspect is in custody. *Ollie,* 442 F.3d at 1137. "Absent formal arrest, the police must give *Miranda* warnings when the suspect's freedom of movement is restricted to a degree akin to formal arrest." *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983); *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004)).

In determining whether a person's freedom of movement was subject to arrest-

3

like restraints sufficient enough to equal custody, a court must answer two questions-"first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). A reviewing court must look to the totality of the circumstances when reviewing whether or not a person was in custody during a police interrogation. *LeBrun*, 363 F.3d at 720; *United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002). The court must also "examine both the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation 'in light of whether a reasonable person in the suspect's position would have understood his situation to be one of custody.'" *Axsom*, 289 F.3d at 500 (citing *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990).

The Court of Appeals for the Eighth Circuit has identified six common factors that "are relevant to a determination of whether an interview is custodial." *Ollie*, 442 F.3d at 1137; *Axsom*, 289 F.3d at 500. The factors are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntary acquiesced to official requests to respond to questions; (4) whether strong arm tactics were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning

*Griffin*, 922 F.2d at 1349. The first three conditions tend to mitigate against a custodial atmosphere. *Axsom*, 289 F.3d at 500-01. The last three indicia "tend to aggravate the interview's custodial nature." *Ollie*, 442 F.3d at 1137. "No single consideration is

4

Case 4:09-cr-00163-BCW   Document 17   Filed 07/29/09   Page 4 of 10

dispositive, nor must they all weigh in the defendant's favor for [the court] to decide that he or she was in custody." *Id.* at 1137-38 (citing *Axsom*, 289 F.3d at 501).

Agent Kanatzar did initially inform the Defendant that he was not under arrest. However, the agents did not advise the Defendant that he could refuse to answer their questions. The agents also failed to inform the Defendant that he could stop answering questions at any time. The Defendant did not believe he could freely terminate the encounter with the agents, and he believed that the agents were going to place him under arrest. Based on the foregoing, the first factor weighs in favor of custody.

The Defendant did not enjoy unrestrained freedom of movement during the interrogation. Agents met him at the front steps of his residence as he returned home from work. The agents refused to allow him to enter the residence, and began questioning him on the front steps of his home. Further, the agents directed the Defendant to a bedroom in the residence where the interrogation was completed. The Defendant was not aware that he was free to leave, and he thought that the agents were there to arrest him because they told him that they had enough evidence to arrest him. Despite SSA Kanatzar's assertion to Defendant that he was not under arrest, for the foregoing reasons, the Defendant's freedom of movement was restrained in an arrest-like manner.

Finally, the Defendant did not initiate contact with the agents, nor did he voluntarily acquiesce to their official requests to answer questions. The agents arrived to execute the search warrant on defendant's residence while Defendant was away at work. The Defendant returned home to discover the many agents at his home. Further, the Defendant felt that he had to answer the agents' questions due to the police-dominated atmosphere during the execution of the search warrant. This final mitigating

5

factor weighs in favor of a finding of custody.

There was no evidence that the agents employed any strong arm tactics against the Defendant during the custodial interrogation. The first aggravating factor is unfounded. However, the large number of federal agents in the Defendant's residence and the domination and control that agents Kanatzar and Stoker asserted over the Defendant weighs heavily in favor of a finding of a police dominated atmosphere. Numerous agents were in the Defendant's home rifling through his family's possessions and belongings, and agents were always in such close proximity to Defendant as to extinguish any personal privacy of the Defendant. No less than five agents were present during the entirety of the forty-five minute interrogation. The second aggravating factor certainly tilts in favor of custody. The final aggravating factor is not present because the Defendant was not arrested after the custodial interrogation.

Based on the totality of the circumstances, the interrogation of the Defendant was custodial, and the Defendant was entitled to *Miranda* warnings prior to the questioning. Therefore, any statements made by the Defendant during the custodial interrogation must be suppressed.

### B.  Items Seized and Statements Made By Defendant to Agents During the Execution of the Second Search Warrant on March 25, 2009 Should Be Suppressed as the Fruit of the Poisonous Tree

Evidence, tangible or intangible, directly or indirectly gained as the result of a Constitutional violation is tainted fruit of the poisonous tree and is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). The issue in fruit of the poisonous tree cases is whether the government agents obtained evidence by exploiting the Constitutional violation or by other means which sufficiently removes the taint of the

6

initial illegality. *United States v. Alvarez-Manzo*, 2009 U.S. App. LEXIS 14854, at *19 (8th Cir., July 6, 2009) (citing *Wong Sun*, 371 U.S. at 488). In determining whether the subsequent evidence was obtained by exploiting the Constitutional violation, courts consider three factors: (1) the closeness in time between the initial illegality and when the subsequent evidence is obtained; (2) any independent intervening factors; and (3) the flagrancy of the government's Constitutional violation. *Id.* at *19-20 (citing *Brown v. Illinois*, 422 U.S. 590 (1975)).

As mentioned in Part A, Defendant made incriminating statements during the course of a custodial interrogation in which he was not recited his Constitutionally-required *Miranda* warnings. These statements, chiefly Defendant's passwords, and evidence gained from the statements materially supported the government's application for the second search warrant issued March 25, 2009. As a result of the execution of the second search warrant on March 25, 2009, the government seized physical evidence and obtained further incriminating statements from the Defendant. But for the initial violation of Defendant's *Miranda* rights on March 20, 2009, the subsequent evidence would not have been seized by the government.

The second search warrant was executed within five days after government agents illegally elicited Defendant's statements. This easily tilts the temporal relationship part of the *Alvarez-Manzo* factors in Defendant's favor. Further, because the government relied on the password obtained from Defendant on March 20, 2009 to access the computer's hard drive, the government cannot present an intervening circumstance that would sufficiently purge the taint of the initial illegality. Therefore, the second *Alvarez-Manzo* factor weighs in favor of the defendant. Finally, the conduct of the agents in subjecting Defendant to a custodial interrogation without advising him of

7

his *Miranda* rights as required by the Constitution of the United States and by ICE policy was purposeful and flagrant. The third *Alvarez-Manzo* factor favors the Defendant. Based on the foregoing, the taint of the initial Constitutional violation by the government agents against the Defendant contaminated the subsequent search of Defendant's residence and the interrogation of Defendant on March 25, 2009.

**C. Statements Made By Defendant on March 25, 2009 Should Be Suppressed Because Defendant Did Not Voluntarily, Intelligently, and Knowingly Waive His Fifth Amendment Rights**

In order for a person to adequately waive a Constitutional protection like *Miranda*, the waiver must be voluntary. *See United States v. Jimenez*, 478 F.3d 929, 932 (8th Cir. 2007). "The voluntariness of consent is evaluated in light of the totality of the circumstances." *Id.* at 932 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). The waiver of a Constitutional right is voluntary if it was "the product of an essentially free and unconstrained choice by its maker," and not "the product of duress or coercion, express or implied." *Bustamonte*, 412 U.S. at 225-27. One factor that militates against a finding of voluntariness is if the subject providing the waiver was intoxicated or under the influence of any substance at the time he waived the Constitutional protection. *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990) (listing as other factors the age of the subject, the subject's education and intelligence, and whether, due to previous arrest, the subject was familiar with the Constitutional protections afforded to suspects). "The question is one of mental awareness" so that the waiver of the Constitutional right "was the consensual act of one who knew what he was doing and had a reasonable appreciation of the nature and significance of his actions." *United States v. Rambo*, 789 F.2d 1289, 1297 (8th Cir. 1986).

8

The Defendant was under the influence of sleeping pills at the time the agents roused him out of bed when they executed the second search warrant on March 25, 2009. Further, the agents had determined during first interview when the Defendant returns home from work in the late morning, and that the Defendant typically goes to sleep around 1:00 PM to 2:00 PM. Defendant does not recall much from the interrogation on March 25, 2009, and admits that he was "out of it" while the agents were questioning him. The physiological affects of the sleeping pills dulled the Defendant's mental awareness and mental alertness to the point that the Defendant did not know what he was doing and did not have a reasonable appreciation of the nature and significance of his actions. Based on the foregoing, Defendant's waiver of his *Miranda* rights on March 25, 2009 was involuntary.

## Conclusion

The Defendant was subjected to a custodial interrogation without receiving his *Miranda* warnings during the March 20, 2009 search warrant execution. During that interrogation, Defendant made certain incriminating statements, which were used to procure a second search warrant that was subsequently executed on March 25, 2009. As a result of the second search warrant, agents obtained certain tangible items and elicited further incriminating statements from Defendant. Because the initial statements made during the custodial interrogation on March 20, 2009 were obtained in violation of *Miranda*, all subsequent evidence, tangible and intangible, obtained as a result of the illegality must be suppressed as the fruit of the poisonous tree. In addition, Defendant did not provide a voluntary waiver of his Constitutional protections under *Miranda* during the interrogation on March 25, 2009 because he was under the influence of sleeping

9

pills, and the medication sufficiently dulled his awareness and his ability to appreciate the nature and significance of his actions.

**WHEREFORE**, for all the above-stated reasons, Defendant respectfully requests this Court to suppress all statements made during the custodial interrogation on March 20, 2009; all evidence seized and any statements made by the Defendant pursuant to the search warrant executed March 25, 2009; for a hearing on the issue; and for such other relief as this court deems just and proper under the circumstances.

>Respectfully Submitted,
>
>THE O'CONNOR LAW FIRM, P.C.
>
>/s/ Matthew J. O'Connor
>By: Matthew O'Connor, MO #41834
>523 Grand Suite B
>Kansas City, MO 64106
>816-842-1111
>(816) 842-3322 (Facsimile)
>ATTORNEYS FOR DEFENDANT

**Certificate of Service**

In accordance with Rule 49(a), (b), Fed. R. Crim. P., and Rule 5 (b), Fed, R. Civ. P., It is hereby CERTIFIED that one copy of the foregoing motion was electronically filed and sent this 29th day of July 2009 to:

Ms. M. Elizabeth Phillips
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, MO 64106

>/s/Matthew O'Connor
>Matthew O'Connor